**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

THOMAS HARE,

        Plaintiff,

v.                                                                                       No. 2:19-cv-01091-RB-GJF

BENNETT J. BAUR, an individual;
STATE OF NEW MEXICO LAW
OFFICES OF THE PUBLIC DEFENDER;
JENNIFER BIRMINGHAM, an individual;
JAMES WALKER, an individual; and
MICHELLE HALEY, an individual;

        Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Hare previously worked as an Associate Trial Attorney for the Law Offices of the Public Defender (LOPD) in Alamogordo, New Mexico. He filed suit against the LOPD and several of its employees, asserting claims under federal and state law. Remaining are his claims for retaliation pursuant to Title VII and 42 U.S.C. § 1981. The parties filed cross-motions for summary judgment. For the reasons discussed below, the Court will deny Plaintiff's motion for summary judgment and grant summary judgment to Defendants.

**I.**     **Factual Background**

Beginning in October 2014, Plaintiff was employed for approximately one year as an Associate Trial Attorney for the LOPD in Alamogordo. (Doc. 71-4 at 3, 9.) At some point, Plaintiff filed two Equal Employment Opportunity Commission (EEOC) charges against the LOPD based on that period of employment.[1] (*See* Doc. 1 (Compl.) at 5, 7–8.) The substance of those charges is

---

[1] While neither party submitted direct evidence of these charges, Defendants concede that Plaintiff filed EEOC charges sometime in 2015 or 2016. (*See* Doc. 103 at 11.)

1

not at issue in this lawsuit.

In April 2018, Plaintiff applied for two positions with the LOPD—a Senior Criminal Defense Attorney position in Roswell and a Defense Attorney position in Carlsbad. (*See* Docs. 103-A-1; 103-A-2; 103-B ¶¶ 3–4; 103-C ¶¶ 3–4.) In his applications for each position, his work history reflected that he had approximately four years of experience as a practicing attorney but had not practiced law since August 2016.[2] (*See* Docs. 103-A-1 at 4–6 (describing work experience); 103-A-2 at 9–11 (same); 103-B ¶ 6; 103-C ¶ 6.) Craig Acorn, in his duties as a hiring manager with the LOPD, reviewed Plaintiff's application for the Roswell position. (Doc. 103-B ¶¶ 3–4.) Acorn chose a different applicant who had "significantly more job-related experience" than Plaintiff. (*Id.* ¶ 6.) He based his hiring decision in part on the fact that Plaintiff "had not practiced law since August 2016." (*Id.*) Deirdre Ewing, in her duties as hiring manager with the LOPD, reviewed Plaintiff's application for the Carlsbad position. (Doc. 103-C ¶¶ 3–4.) She also chose a different applicant who "possessed significantly more job-related experience" and based

---

[2] Specifically, his applications reflect that he worked as a substitute teacher from March 2017 through April 2018, and as a Boys & Girls Club Program Coordinator & Aide from January 2017 through December 2017. (Docs. 103-A-1 at 4–5; 103-A-2 at 9–10.) Prior to that time, he worked as a staff attorney with New Mexico Legal Aid from February 2016 through August 2016. (Docs. 103-A-1 at 4–5; 103-A-2 at 9–10.)

Plaintiff objects to the submission of his employment applications on the basis of "merit," "accuracy," and "authenticity." (*See* Doc. 110 at 4–7.) Ronald Herrera testified that as the Director of Human Resources, he is "familiar with the creation of employment records, the record keeping practices of the LOPD, and the computer systems LOPD uses to maintain records." (Doc. 103-A ¶ 3.) He further testified that each of Plaintiff's applications was "a true and correct copy" and was a "record . . . kept in the regular course of business and it was regular practice in the office to keep this type of record at the time it was made." (*Id.* ¶¶ 14, 22.) The Court finds that Herrera is "in a position to attest to the authenticity of the records" and has laid a sufficient foundation for them. *See Tanner v. McMurray*, 429 F. Supp. 3d 1047, 1145 (D.N.M. 2019) (quoting *United States v. Dawson*, 400 F.2d 194, 199 (2d Cir. 1968)). Without more specific argument on his objections, the Court finds they should be overruled.

Plaintiff also objects to the applications "on the basis that he stated that his actual amount of legal experience at the time was 4.5 years and that he completed eleven or more felony trials." (Doc. 110 at 5.) As Plaintiff does not offer evidence to specifically controvert the information represented in the applications, *see* D.N.M. LR-Civ. 56.1(b), the Court overrules the objection and finds that the applications should be admitted.

her hiring decision in part on the fact that Plaintiff "had not practiced law since August 2016."[3] (*Id.* ¶ 6.) Neither Acorn nor Ewing knew that Plaintiff had ever filed EEOC charges against the LOPD, nor did they consider EEOC charges in making their hiring decisions for these open positions.[4] (Docs. 103-B ¶ 7; 103-C ¶ 7.)

Ronald Herrera, the Director of Human Resources for the LOPD, testified that "[h]iring managers have been trained in non-discriminatory hiring practices" and "are the only individuals who are able to make hiring decisions within the LOPD." and (Doc. 103-A ¶¶ 3, 5.) The LOPD does not share any information about "internal or employee complaints, union grievances, or EEOC/[Human Rights Bureau] Charges" with hiring managers. (*Id.* ¶ 6.) All such complaints and "[c]harge files are kept separate from employee personnel files because they are confidential and are not relevant when making hiring decisions." (*Id.*)

In 2018, Plaintiff worked for a time as a trial attorney with the Third Judicial District Attorney's office in Las Cruces, New Mexico, separating from the position in September 2018. (Doc. 71-4 at 2.) He resigned because his position did not afford him sufficient time to litigate a custody matter. (*Id.*) He "had a custody hearing on or about September 21, 2018[,]" which his job with the District Attorney's office "would have prevented [him] from [attending] . . . ." (*Id.*)

Defendant Jennifer Birmingham is the Deputy Chief Public Defender for the State of New Mexico. (Doc. 103-D ¶ 2.) Birmingham provided an unsworn declaration attesting that she had

---

[3] Plaintiff objects to "all representations" regarding the experience of the other applicants and to "all representations regarding the referrals of [his] application[s] to" the hiring managers. (Doc. 110 at 6–7.) Plaintiff fails, though, to specifically controvert these facts by directing the Court to record evidence. *See* D.N.M. LR-Civ. 56.1(b). Accordingly, the Court overrules Plaintiff's objections and deems these facts admitted.

[4] Plaintiff disputes that the hiring managers had no knowledge that he previously filed EEOC charges. (Doc. 110 at 7–8.) Yet he fails to specifically controvert these facts by directing the Court to the record, *see* D.N.M. LR-Civ. 56.1(b), and his objections are overruled.

received information about Plaintiff that led her to take certain actions:

> On or around September 19, 2018, I received a call from a coworker of Dr. Hare in my capacity of volunteering with the New Mexico Judges and Lawyer's Assistance Program ("JLAP") who expressed concerns to me about Dr. Hare's behavior, mental state, and ability to practice law. This individual also told me that Dr. Hare walked out of court in Las Cruces. The source believed that Dr. Hare quit his job because he had returned to the District Attorney's Office in Las Cruces, angry and because he threw a computer. I reported this further up the chain within JLAP. . . . On that same day, I received a call from a manager in LOPD's Las Cruces office who also told me that Dr. Hare exhibited concerning behavior in court. This manager also relayed to me that he had heard that Mr. Hare threw his computer when he returned to the DA's Office.[5]

(Doc. 103-D ¶¶ 6–7.) Two days later, Birmingham traveled to the Alamogordo LOPD office, where she heard from Defendant Haley, Defendant Walker, and another LOPD employee that there was still concern about Plaintiff's behavior.[6] (*Id.* ¶¶ 8–10.) Birmingham decided "to lock the Alamogordo LOPD office's doors for the day to protect the health and welfare of the LOPD employees. [She] later learned that the staff had not lock [sic] the doors, but that everyone remained cautious." (*Id.* ¶ 11.) She also spoke with "the Las Cruces LOPD office and the Deputy Chief District Attorney in Las Cruces to inform them of [her] concerns to ensure that any LOPD employees in or around the District Attorney's Office facilities would remain safe." (*Id.* ¶ 12.)

---

[5] Plaintiff asserts several objections to Birmingham's declaration, all of which the Court overrules. *See infra* Section IV(A). The Court admits Birmingham's recollection of her conversations with the individuals not for the truth of their stories, but for the effect their stories had on Birmingham. *See Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993).

[6] In a May 2019 statement Birmingham prepared for Plaintiff's EEOC charge, she recalled that Defendant Haley told her that Plaintiff had a "court date" in Alamogordo "for a criminal charge in Magistrate Court." (Doc. 103-D-1 at 1.) Plaintiff objects to this statement and to Birmingham's statements regarding concerns shared with her by the Defendants and LOPD employees. (Doc. 110 at 10–11.) The Court overrules the objections and admits the statements not for the truth of the matter, but for the effect the statements had on Birmingham. *See Faulkner*, 3 F.3d at 1434.

Additionally, the Court notes that Plaintiff never had any criminal charge pending in New Mexico—rather, he had a personal custody hearing on September 21, 2018. (*See* Doc. 64-2 ¶ 2.) The Court confirmed that there were no state criminal cases against Plaintiff by performing a search on the New Mexico Courts Case Lookup website, available at https://caselookup.nmcourts.gov/caselookup/ (last visited Dec. 28, 2020). *See United States v. Small*, 605 F.3d 765, 768 n.2 (10th Cir. 2010) (recognizing that a court may take judicial notice of docket information from another forum).

Birmingham, Haley, and Walker have all testified that they were unaware that Plaintiff had ever filed EEOC charges against the LOPD. (*See id.* ¶ 13; Docs. 103-E ¶ 3; 103-F ¶ 3.)

Plaintiff filed suit against Defendants Baur, LOPD, Birmingham, Walker, and Haley on November 22, 2019, asserting claims for retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2000e-17 and 42 U.S.C. § 1981, and for various state law claims under N.M. Stat. Ann. §§ 30-13-3, 41-4-1–30, and 41-7-1–6. (Compl.) Attached to the Complaint is the EEOC Charge of Discrimination Plaintiff filed, in which he asserted that Defendants retaliated against him by failing to hire him in April 2018 and by making up a false story about him in September 2018. (*Id.* at 8–9.) Also attached is the EEOC's Dismissal letter and Notice of Rights, dated September 12, 2019. (*Id.* at 10–12.)

Plaintiff has since conceded that Defendants are not subject to his state law tort claims, and the Court dismisses all claims under §§ 41-4-1–30 and 41-7-1–6 with prejudice. (*See* Docs. 85 at 5 n.3 (noting that Plaintiff conceded that Defendants Birmingham, Walker, and Haley are entitled to qualified immunity from state tort law claims (citing Doc. 78 ¶¶ 8–9)); 110 at 2, 13 (conceding that state law tort claims may not lie against Defendants Baur and LOPD).) He has also stated that he pled § 30-13-3, a New Mexico state criminal statute, "for illustrative purposes only" (Doc. 64 at 2), and the Court thus dismisses this claim with prejudice. The only claims remaining, then, are Plaintiff's claims of retaliation under Title VII and § 1981.

**II.   Legal Standards**

    **A.   Summary Judgment Standard of Review**

"Summary judgment is proper if, viewing the evidence in the light most favorable to the

non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Halley v. Huckaby*, 902 F.3d 1136, 1143 (10th Cir. 2018) (quoting *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)). The Court treats cross-motions for summary judgment no differently: it analyzes each motion on its own merits and "according to the well-worn standard for individual Rule 56 motions." *See AT&T Mobility Servs., LLC v. Vill. of Corrales*, 127 F. Supp. 3d 1169, 1172 (D.N.M. 2015).

"The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Tanner v. San Juan Cty. Sheriff's Office*, 864 F. Supp. 2d 1090, 1106 (D.N.M. 2012) (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)); (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Id.* at 1107 (quotation and citations omitted). Instead, the non-moving party must come forward with "sufficient evidence on which the factfinder could reasonably find" in her favor. *Id.* (citations omitted). Evidence that is "merely colorable," *Anderson*, 477 U.S. at 249, or consists only of "[u]nsubstantiated allegations[,]" *McCoy*, 887 F.3d at 1044 (quotation omitted), is insufficient.

### B. Relevant Local Rules

Pursuant to Local Rule 56, the party moving for summary judgment "must set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists." D.N.M. LR-Civ. 56(b). The movant must number the facts "and must refer with particularity to those portions of the record upon which the movant relies." *Id.* In return, the non-moving party

must also provide "a concise statement of the material facts . . . as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." *Id.* "**All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.**" *Id.* (emphasis added). "The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion." *Id.*

### III. Plaintiff's Motion for Summary Judgment (Doc. 61)[7]

#### A. Evidentiary Objections and Rulings

Plaintiff makes several factual assertions that fail to meet summary judgment standards. For example, he states: "Defendant Birmingham admits to formulating the beginnings of her retaliation by defamation against Plaintiff" in her statement. (Doc. 64 at 15.) Similarly, Plaintiff asserts that "Birmingham admits" that "she conspired with Defendant Haley and Defendant Walker . . . to concoct the false story [about] Plaintiff . . . ." (*Id.*) Birmingham did not admit to retaliation or defamation, nor did she admit that she conspired with anyone, and the Court sustains Defendants' objections regarding Plaintiff's portrayal of Birmingham's declaration. (*See* Doc. 89 at 6 (objecting to facts 16–18, 20 on the basis that the facts contain "conclusory statements of law rather than facts" and "conclusory assertions of motive that are not substantiated by the record, evidence, or testimony").)

Several of Plaintiff's factual assertions, including facts numbered 1, 19–24, and 25–29, are legal conclusions, and the Court does not accept them as true. *See Ashcroft*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

---

[7] In accordance with summary judgment standards, the Court construes all facts in a light most favorable to Defendants in considering Plaintiff's motion.

to legal conclusions"). Defendants' objections to these facts are sustained. (*See* Doc. 89 at 5–8.)

Finally, Plaintiff asserts that "the LOPD has a long history of cooperating with the Twelfth Judicial District Attorney's Office in Otero County in fostering, supporting and/or disseminating false allegations against Plaintiff." (Doc. 64 at 19.) He attaches a 2015 email thread between himself and an individual who is not involved in this lawsuit. (*See* Doc. 64-9.) The email has no relevancy to the events at issue in this lawsuit and will not be considered.

### B.     Defendants have not "consented" to the substantive claims and allegations.

Plaintiff asserts several facts regarding the procedural posture of this matter when he requested default judgment. (*See* Doc. 64 at 11–14; *see also* Doc. 110 at 13.) He argues that Defendants filed their response (Doc. 18) 27 days after he filed his motion for entry of default (Doc. 10). (*See* Doc. 64 at 12.) Because the Local Rules provide that response briefs must be served within 14 days of the motion, D.N.M. LR-Civ. 7.4(a), and "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion[,]" D.N.M. LR-Civ. 7.1(b), Plaintiff argues that Defendants' late response should now result in the Court finding that they "consented" to his substantive claims and allegations. (*See* Doc. 64 at 12; *see also* Doc. 75 at 22 (clarifying that he is not seeking default judgment, but is rather arguing that "Defendants consented to [his] claims by filing late responsive pleadings").)

The Court denies the motion on this basis. Plaintiff filed his motion for entry of default on December 23, 2019. (Doc. 10.) Defendants answered the complaint on December 26, 2019. As the Court previously stated, "[t]he filing of a late answer may be construed as a motion to set [a]side an entry of default." (Doc. 45 at 4 (quoting *Cordova v. Peavey Co.*, Nov. CV 01-1026 WJ/KBM, 2004 WL 7337730, at *1 (D.N.M. Apr. 9, 2004)).) Defendants' answer, thus construed, makes clear that they did not consent to the allegations in the complaint. Thus, the motion is denied on

8

this basis.

### C. Plaintiff fails to make out a prima facie case of retaliation.

Both Title VII and § 1981 prohibit retaliation. *See CBOCS W. Inc. v. Humphries*, 553 U.S. 442, 446 (2008); *see also Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008). To establish a prima facie case for retaliation under either statute, courts apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Somoza*, 513 F.3d at 1211. First, the plaintiff must establish a prima facie case of retaliation. *See id.* (citing *McDonnell Douglas*, 411 U.S. at 802). If the plaintiff succeeds, the burden shifts to "the employer [to] provide a legitimate and facially non-discriminatory reason for its decision." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). If the employer meets its burden, the burden shifts back to "the plaintiff [to] establish that the [employer's] reasons were a pretext for discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

"[T]o establish a prima facie case of retaliation, Plaintiff[] must show . . . '(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *Id.* (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)). Here, Defendants concede that Plaintiff filed EEOC charges against the LOPD in 2015 or 2016, meeting the first element of a prima facie case. (Doc. 89 at 18.) Defendants also concede that Plaintiff meets the second element with respect to Defendants' failure to hire him in April 2018.[8] (*Id.*)

Plaintiff's case fails at the third element—he submits no evidence to show a causal

---

[8] Defendants argue that any statements made by Birmingham, Haley, or Walker are not materially adverse and do not meet the second element of a prima facie retaliation claim. (*See* Doc. 89 at 18.) Because the Court finds that Plaintiff cannot meet the third element of a prima facie case, the Court need not reach this issue.

9

connection between his 2015 or 2016 EEOC charges and any of Defendants' actions in 2018. There is no evidence that Defendants or any LOPD employees knew about Plaintiff's protected activity. Moreover, Plaintiff cannot rely on "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (quotation omitted). The two-year period between the protected activity and the conduct at issue is simply not a "close temporal proximity" that would establish causation. *See id.* (noting that "a three-month period, standing alone, is insufficient to establish causation") (quotation omitted). Consequently, the Court denies Plaintiff's motion.

## IV. Defendants' Motion for Summary Judgment (Doc. 103)[9]

### A. Evidentiary Objections and Rulings

Plaintiff objects to all of Defendants' material facts on the basis that "they are untimely, irrelevant and moot given [their] prior consent to [his] substantive claims, allegations and damages . . . ." (Doc. 110 at 4.) As the Court found above, Defendants did not consent to his claims. *See supra* Sec. III(B). The Court overrules these objections for the same reason.

Plaintiff generally objects to Defendants' material facts nos. 2–23 and 25 "on the basis of irrelevance under Fed. R. Evid. 402 and 403, and on the basis of unsworn inadmissible heresay [sic] under Fed. R. Evid. 802." (Doc. 110 at 4–12.) "The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence." *Train v. City of Albuquerque*, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009) (citing Fed. R. Evid. 401, 402, 403). "Relevant evidence is evidence that has a tendency to 'make the existence of any fact that is of consequence to the determination of the action more probable or less probable

---

[9] In accordance with summary judgment standards, the Court construes all facts in a light most favorable to Plaintiff in considering Defendants' motion.

than it would be without the evidence.'" *United States v. Gutierrez-Castro*, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011) (quoting Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")). "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'" *United States v. Ganadonegro*, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012) (quoting Fed. R. Evid. 401 advisory committee's note)).

The Court will overrule Plaintiff's objections to the cited evidence on the basis of relevance. Defendants' material facts 2–23 and 25 rely on the unsworn declarations of Herrera, Acorn, Ewing, Birmingham, Haley, and Walker, as well as the related exhibits, including Plaintiff's employment applications with the LOPD and Birmingham's May 2019 statement. This evidence is directly relevant to the question of whether Defendants retaliated against Plaintiff as alleged in the Complaint. The employment applications and the declarations from Herrera, Acorn, and Ewing provide evidence that the LOPD does not share information regarding past EEOC complaints with its hiring managers, and that the hiring managers selected individuals over Plaintiff due to non-retaliatory reasons. The declarations from Birmingham, Haley, and Walker show that these individuals were unaware Plaintiff had ever lodged a complaint against the LOPD.

The Court will also overrule the objections on the basis of hearsay. Plaintiff objects "on the basis [that the declarations are] unsworn inadmissible heresay [sic] under Fed. R. Evid. 802." (*See, e.g.*, Doc. 110 at 5.) Presumably, Plaintiff is objecting to the fact that Defendants submitted "unsworn declarations." (*See* Docs. 103-A–F.) Yet, parties may submit unsworn declarations to support or oppose a summary judgment motion provided that the declaration meets the requirements of 28 U.S.C. § 1746. *See* Fed. R. Civ. P. 56(c)(4); *Estrada v. Cook*, 166 F. Supp. 3d

11

1230, 1238 (D.N.M. 2015); *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006). Section "1746 mandates that the affiant declare, under penalty of perjury, that the facts contained in the affidavit are true." *Elder-Keep*, 460 F.3d at 984. Here, all affiants referenced 28 U.S.C. § 1746 and included the required statutory language: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on [date]" and signed the declaration. (*See* Docs. 103-A at 1, 3; 103-B at 1, 2; 103-C at 1, 2; 103-D at 1, 3; 103-E; 103-F.) The objections on this basis are thus overruled. *See Navajo Nation Human Rts. Comm's v. San Juan Cty.*, 281 F. Supp. 3d 1136, 1159–60 (D. Utah 2017).

Plaintiff further objects to Birmingham's declaration and exhibit because she refers to statements that another person made to her. (*See* Docs. 110 at 9; 103-D; 103-D-1.) Thus, he argues, "the allegations attributed to this alleged unnamed caller by Defendant Birmingham are heresay within heresay." [sic] (Doc. 110 at 9.) Defendants respond that "[t]his is incorrect because [they] are not using those statements to show the truth of the matter asserted, but rather to show the effect on the listener." (Doc. 120 at 6.) The Court agrees.

"'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). "A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted . . . ." *United States v. Ballou*, 59 F. Supp. 3d 1038, 1058 (D.N.M. 2014) (citation omitted). "Statements offered not to prove the truth of the statements, but rather 'offered for the effect on the listener . . . are generally not hearsay.'" *Id.* (quoting *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993)) (subsequent citation omitted). In *Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc.*, for example, "the plaintiffs objected to the defendants' use of documents relating to third parties'

12

bankruptcy proceedings, asserting that the statements that the defendants wished to use were inadmissible hearsay statements." *Id.* (discussing *Skyline Potato*, No. CIV 10-0698 JB/RHS, 2013 WL 311846, at *19 (D.N.M. Jan. 18, 2013)). The court found, though, that the documents fell within a hearsay exception, because the defendants offered them "to show that the plaintiffs had notice of the third parties' bankruptcy filings . . . ." *Id.* Here, Defendants are not offering the statements as conveyed "to Defendant Birmingham to show that Plaintiff acted in any particular way or that" any of the individuals actually "had concerns about Plaintiff[,]" but "to show why [Birmingham] had concerns about Plaintiff and why she acted to protect LOPD staff in Alamogordo and Las Cruces." (Doc. 120 at 6–7.) As Defendants are not offering the statements to prove the truth of the matter therein, they are not hearsay. Plaintiff's objection on this basis is overruled.

Finally, Plaintiff objects to Birmingham's statement on the grounds that it is "demonstrably false." (Doc. 110 at 9.) Plaintiff submits an affidavit from Mr. Todd Holmes, who testifies that he saw Plaintiff in court on September 19, 2018, and Plaintiff was "polite, respectful and courteous to the Court and the parties during the hearings." (Doc. 64-2 ¶ 8.) At the conclusion of Plaintiff's hearings, Mr. Holmes saw Plaintiff tell "one of the supervisors for the District Attorney's office that he intended to resign his position with their office." (*Id.*) "Shortly thereafter, he respectfully requested to be excused from [the] courtroom, and, politely left to tend to his business." (*Id.* ¶ 9.) The Court finds that there is a dispute regarding Plaintiff's behavior on September 19, 2018, but the dispute is not material to the analysis of the motion. Critically, Plaintiff has not introduced evidence sufficient to specifically controvert Birmingham's statements that at least four individuals shared concerns with her about Plaintiff's behavior. Thus, Birmingham's statements are admissible to show their effect on her, regardless of the veracity of the information about

Plaintiff's conduct. Plaintiff's objections regarding Birmingham's declaration are overruled.

### B.     Plaintiff has not established a claim for retaliation.

Again, to establish a prima facie case for retaliation under either Title VII or § 1981, courts apply the burden-shifting framework of *McDonnell Douglas*. *See Somoza*, 513 F.3d at 1211. Defendants argue that Plaintiff fails to establish a prima facie case of retaliation. (*See* Doc. 103 at 9–10.) As in their opposition to Plaintiff's motion, Defendants concede that he can meet the first two elements of the prima facie case. (*See id.* at 11.) They argue, however, that Plaintiff cannot show a causal connection between the 2018 conduct and the 2015 or 2016 protected activity. (*Id.* at 12–13.) Plaintiff does not respond to this argument, except by objecting to it "as untimely presented and moot" because he believes that Defendants have "consented" to his claims. (*See* Doc. 110 at 13.) The Court has already overruled these objections and finds that they are insufficient to meet Plaintiff's burden to withstand summary judgment. Because Plaintiff does not even attempt to establish a causal connection between the protected activity and the complained-of conduct in 2018, his claim fails.

Even if Plaintiff had established a prima facie case, Defendants have offered legitimate and non-discriminatory reasons for the 2018 actions. Regarding the April 2018 employment applications, Acorn and Ewing testified that they hired another applicant who had more experience than Plaintiff. They also considered the fact that Plaintiff had not worked as an attorney since 2016. Most importantly, they testified that they did not know that Plaintiff ever filed EEOC charges, and Herrera corroborated this testimony with his own statement that hiring managers do not have access to such charges. Further, assuming the September 2018 conduct constituted a materially adverse action—a decision the Court declines to make—Birmingham testified to a facially non-discriminatory reason for her actions (her concern for the LOPD employees given Plaintiff's

14

alleged erratic behavior). And again, all involved Defendants testified that they were unaware Plaintiff ever filed EEOC charges. As Plaintiff did not show that these reasons were pretextual, his retaliation claims fail. The Court will grant Defendants' motion.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Docs. 61; 64) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 103) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' motions in limine (Docs. 117–119) are **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that the Court will rule on Plaintiff's Motion for Rule 11 Sanctions (Doc. 147) when it is fully briefed;

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE

15